UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMEL CRUMEDY,

                              Plaintiff,

v.                                                    1:16-CV-1261
                                                     (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS          PETER M. MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard Street
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.              GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Jamel Crumedy ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9, 14.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

**I.      RELEVANT BACKGROUND**

   **A.      Factual Background**

Plaintiff was born in 1971, making him 41 years old at the date he filed his application for benefits and 43 years old at the date of the ALJ's decision. Plaintiff reported obtaining his GED. The ALJ found he has no past relevant work. Generally, Plaintiff alleges disability due to posttraumatic stress disorder ("PTSD"), learning problems, and depression.

   **B.      Procedural History**

Plaintiff applied for Supplemental Security Income on April 10, 2013. Plaintiff's application was initially denied on July 17, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Robert Wright on January 5, 2015. On February 10, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 14-24.)[1] On August 16, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

   **C.      The ALJ's Decision**

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 16-24.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (T. 16) Second, the ALJ found that Plaintiff's mental impairment, variously characterized as adjustment disorder, bipolar disorder, attention deficit hyperactivity disorder, anti-social personality disorder, and PTSD, is a severe impairment,

---

[1]      The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

while Plaintiff's asthma and shoulder and knee pain are not severe impairments. (T. 16-17.) Third, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 17-18.) Specifically, the ALJ considered Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders). (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: unskilled work, which is simple, routine and low stress, defined as having only occasional decision making, changes in work setting or interaction with co-workers and no interaction with the public.

(T. 18.) Fifth, the ALJ found that Plaintiff does not have any past relevant work. (T. 23.) Sixth, and finally, the ALJ found that Plaintiff remains able to perform a significant number of jobs in the national economy, such as commercial/institutional cleaner, bagger, and industrial cleaner. (T. 24.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes two arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to include a limitation related to interacting with supervisors despite affording great weight to sources who opined such limitations. (Dkt. No. 9, at 3-4 [Pl. Mem. of Law].)

Second, Plaintiff argues that the ALJ erred in failing to find Plaintiff's physical impairments of shoulder pain and asthma were severe, or alternatively failed to account for these impairments even if non-severe. (Dkt. No. 9, at 4-5 [Pl. Mem. of Law].)

Generally, Defendant makes two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the RFC finding is supported by substantial evidence because the record does not support the need for inclusion of a specific limitation related to interaction with supervisors, particularly the evidence related to Plaintiff's part-time work activity during the relevant period and the opinion evidence. (Dkt. No. 14, at 4-7 [Def. Mem. of Law].) Defendant further argues that the moderate restriction in Plaintiff's ability to accept instructions and criticism from supervisors opined by the non-examining physicians would not preclude Plaintiff from performing work even if accepted. (Dkt. No. 14, at 6-7 [Def. Mem. of Law].)

Second, Defendant argues that the ALJ's findings related to Plaintiff's shoulder pain are supported by substantial evidence because the record did not demonstrate any functional limitations resulting from those impairments. (Dkt. No. 14, at 7-8 [Def. Mem. of Law].) Defendant argues also that the ALJ's findings related to asthma are supported by substantial evidence because the medical evidence does not support greater than minimal restriction from this impairment. (Dkt. No. 14, at 8-9 [Def. Mem. of Law].)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence

standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the RFC Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 4-7 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

Residual functional capacity is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do

6

sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and] symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 5:11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Plaintiff argues that the RFC finding is not supported by substantial evidence because the ALJ failed to include a limitation related to Plaintiff's ability to interact with supervisors in the workplace. (Dkt. No. 9, at 3-4 [Pl. Mem. of Law].) Plaintiff notes that non-examining State Agency psychological consultants J. Alpert and T. Bruni opined that Plaintiff was moderately limited in his ability to accept instructions and criticism from supervisors, and that the ALJ afforded great weight to these sources' opinions without explaining his rationale for omitting this limitation from the RFC. (*Id.*)

On November 14, 2012, Dr. Bruni indicated in the check-box portion of his opinion that Plaintiff was moderately limited in accepting instructions and responding appropriately to criticism from supervisors. (T. 270.) However, in his more specific functional narrative, Dr. Bruni indicated that, in terms of social functioning, Plaintiff would benefit from a work setting

7

with limited contact with co-workers and the public, but could appropriately engage in basic interactions to meet work-related needs. (T. 271.) On July 17, 2013, Dr. Alpert also noted that Plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors. (T. 68.) However, in his narrative, Dr. Alpert opined that Plaintiff overall retained the capacity to respond and relate adequately to others. (T. 69.)

While Plaintiff is correct that both of these sources indicated that Plaintiff was moderately limited in dealing with supervisors in the broad functional checklist portion of their opinions, he fails to acknowledge that neither source found that this moderate limitation translated into a degree of restriction that would impact Plaintiff's ability to function in a workplace. There was nothing improper in the ALJ's decision to rely on the narrative opinions of functional limitations from these sources over the severity ratings that provided the framework for those narrative opinions. After all, Dr. Alpert and Dr. Bruni, as medical sources, were better qualified to determine how that moderate limitation translated into functional restrictions than the ALJ. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.") (citing *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008)); *see also Provencher v. Comm'r of Soc. Sec.*, No. 6:15-CV-1287, 2017 WL 56702, at *5 (N.D.N.Y. Jan. 5, 2017) ("It is well settled that the ALJ is not permitted to substitute his or her own expertise or view of the medical proof for any competent medical opinion.") (citing *Greek*, 802 F.3d at 375; *Rosa*, 168 F.3d at 79; *Balsamo*, 142 F.3d at 81).

The ALJ's reliance on the narrative portions of the State Agency psychological consultants' opinions is also proper because a specific limitation for interacting with supervisors is not persuasively supported by the evidence as a whole. On July 3, 2013, Plaintiff reported his

8

mood had been primarily stable with only intermittent symptoms of stress and irritability; he felt his part-time supported work as a cleaner was going well and he felt respected and valued in that position. (T. 375-76.) On September 13, 2013, Plaintiff reported he had been having issues with a co-worker who watched him too closely when he was doing work tasks, as this behavior made him feel like he was back in prison; he reported he struggled dealing with authority and criticism but he was able to use a coping skill he had learned in class to decrease his anger and diffuse the situation with his co-worker. (T. 406.) Though Plaintiff experienced an exacerbation of mental health symptoms including anger outbursts and irritability through September 2013, he reported feeling much better with a medication change, such that he reported on most subsequent sessions in 2013 that he was not experiencing mental health symptoms and had an improvement in attitude and temper. (T. 410-19.) On October 15, 2013, it was noted that he was involved in an incident at work where he was called out in public for allegedly not following the rules, during which he was observed to be visibly angry but able to handle the situation in a professional manner. (T. 411.) This evidence shows that treatment with medication and therapy to learn coping skills increased Plaintiff's ability to respond appropriately to criticism and instruction in the workplace.

Additionally, the record does not support that Plaintiff was unsuccessful in his supported training employment in 2013 and 2014 due to difficulties accepting instructions from or being in contact with supervisors. Rather, the majority of Plaintiff's difficulties with maintaining attendance at work were related to childcare, and he reported he stopped working at that job in order to qualify for a greater amount of cash assistance from the Department of Social Services. (T. 400, 405, 413-17, 423-24, 436.) While the record does show that Plaintiff had a few instances where he became angry and volatile in response to requests by providers that he

9

viewed as disrespectful or reminiscent of the way he was treated in prison, such as when he was told he needed to take a drug test in order to receive mental health and job training services from PROS, the overall evidence supports the assessment of Richard Higgins, Psy.D., that Plaintiff was reactive only to supervisors who were overly authoritative or who he perceived to be treating him unfairly, not to supervisors in general. (T. 332, 403-04, 407-08.) The evidence from late-2013 in particular also shows that Plaintiff's mental health and anger issues drastically decreased with learned coping skills and medication, suggesting that treatment was effective at ameliorating the symptoms that contributed to his reported issues with supervision. Although the evidence therefore does show some issues were present, there is substantial evidence to support the ALJ's omission of a limitation related to supervisor interaction consistent with the State Agency psychological consultants' narrative opinions.

Additionally, even if the notation that Plaintiff was moderately limited in interacting with supervisors was a part of the State Agency psychological consultants' opinions contrary to their narrative opinions, there is no requirement that the ALJ accept every limitation in an opinion where portions of that opinion are not supported by the evidence. *See Kitka v. Comm'r of Soc. Sec.*, No. 5:15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) ("There is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner.") (citing *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013)); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 5:12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not

to another portion). Rather, the ALJ has the responsibility of reviewing all the evidence before her, resolving inconsistencies, and making a determination consistent with the evidence as a whole. *See Camarata v. Colvin,* No. 6:14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) ("[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'") (quoting *Galiotti v. Astrue,* 266 F. App'x 66, 67 (2d Cir. 2008)); *Bliss v. Colvin*, No. 3:13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, No. 7:12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."). Because the evidence does not support that additional restrictions on interacting with supervisors were necessary, the ALJ's choice to rely on the narrative portions of the State Agency psychological consultants' opinions was not error.

     Lastly, as Defendant notes, Plaintiff does not explain how adoption of a moderate limitation in the ability to interact with supervisors would have impacted the outcome of the ALJ's decision, as moderate mental limitations do not necessarily indicate disabling functional restrictions that would prevent a claimant from performing the basic mental demands required for unskilled work. (Dkt. No. 14, at 6-7 [Def. Mem. of Law]); *see also Martinez v. Comm'r of Soc. Sec.*, No. 3:16-CV-0908, 2017 WL 2633532, at *7 (N.D.N.Y. June 15, 2017) (finding that an RFC determination for unskilled work is not necessarily inconsistent with moderate mental limitations and noting that the Second Circuit has recognized that moderate mental limitations do not prevent a claimant from performing unskilled work) (citing *Zabala v. Astrue*, 595 F.3d 402,

11

410 (2d Cir. 2010); *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012); *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 53 (2d Cir. 2016)). Notably, when the ALJ posed an alternative hypothetical question to the vocational expert that altered the RFC to include limitations for no interaction with the public and co-workers and occasional interaction with supervisors, the vocational expert testified it would be the limitation for no interaction with co-workers that would prevent jobs, not the restriction to occasional supervisor contact. (T. 53.) The vocational expert's testimony therefore plausibly suggests that a limitation for occasional contact with supervisors would not necessarily preclude work. Given that there is nothing to suggest acceptance of this limitation would have altered the outcome of the ALJ's decision, any error in failing to do so would be at most harmless and would not require remand. *See Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, No. 6:14-CV-0578, 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying the request for remand because application of the correct legal standard would not change the outcome); *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding harmless error where the ALJ improperly discounted the treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose).

Based on the above, the ALJ did not commit harmful error in failing to account for a specific limitation related to supervisor interaction. The ALJ also did not fail to reconcile the RFC with the great weight afforded to the non-examining State Agency psychological consultants' opinions because the narrative portions of those sources' opinions did not contain a limitation related to supervisor interaction. Remand is not warranted on this basis.

12

### B. Whether the Step Two Severity Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 7-9 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

At Step Two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities. 20 C.F.R. § 416.920(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, No. 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims' [], the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Colvin v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Taylor*, 32 F. Supp. 3d at 265 (citing *Miller v. Comm'r of Soc. Sec.*, No. 7:05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

Plaintiff argues that the ALJ should have found Plaintiff's shoulder pain to be a severe impairment and should have included functional limitations related to that impairment in the RFC, citing solely to an MRI of the left shoulder from June 14, 2012, that showed mild

acromioclavicular joint arthropathy and a non-displaced tear of the posterosuperior labrum. (Dkt. No. 9, at 4 [Pl. Mem. of Law].) However, there is little evidence other than this MRI to substantiate Plaintiff's shoulder reports, and the evidence that is present does not suggest that this impairment imposed more than minimal effect on Plaintiff's functioning that would have needed to be accounted for in the RFC. Evidence from prior to the application filing date showed reports of shoulder pain, but examinations were normal without any loss of range of motion or signs of discomfort. (T. 442-46.) Consultative examiner Kautilya Puri, M.D., noted only mild tenderness in the shoulders with palpation and movement and concluded there were no limitations related to the upper extremities. (T. 245.) Substantial evidence therefore supports the ALJ's conclusion that Plaintiff's shoulder impairment was not a severe impairment as well as that there was no basis for including shoulder-related limitations in the RFC.

Plaintiff also argues that the ALJ erred in failing to include a limitation for avoidance of pulmonary irritants in the RFC even if he found asthma was a non-severe impairment because Dr. Puri opined that Plaintiff "should avoid pulmonary irritants to avoid exacerbation of symptoms." (Dkt. No. 9, at 4-5 [Pl. Mem. of Law].) However, this argument is not persuasive because a restriction for avoidance of pulmonary irritants is not supported by the medical evidence, including Dr. Puri's own objective testing and examination.

First, Plaintiff's assertion that Dr. Puri opined that Plaintiff should avoid pulmonary irritants is not wholly accurate. Rather, Dr. Puri recommended that Plaintiff "not be in an environment which would increase his respiratory complaints." (T. 245.) Plaintiff's attempt to equate this recommendation with a need to avoid all pulmonary irritants is not supported by the spirometry testing that showed 90 to 100 percent of predicted functioning, results which suggest minimal impairment of lung functioning. (T. 245, 247.)

14

Second, the medical record does not show respiratory symptoms or suggest that Plaintiff experienced frequent or significant asthma exacerbations or other symptoms that would impact his work-related functional abilities. On June 8, 2012, it was noted he was not using Proventil for asthma. (T. 442.) On January 20, 2014, it was noted only that he used albuterol in the springtime for asthma. (T. 440.) It does not appear that Plaintiff received any treatment specifically for acute asthma-related symptoms or that he reported any such symptoms during the period after he filed his Supplemental Security Income application. As the evidence does not suggest that Plaintiff's asthma produced symptoms that would interfere with his functioning, Plaintiff's interpretation of Dr. Puri's recommendation as necessitating avoidance of all pulmonary irritants is not reasonable or supported. Notably, Plaintiff has not pointed to any evidence which would suggest what environments or environmental factors would increase his respiratory complaints. The ALJ's omission of any functional limitation related to asthma is therefore supported by substantial evidence.

Third, the Selected Characteristics of Occupations (the companion publication to the Social Security Administration-accepted Dictionary of Occupational Titles) indicates that none of the three jobs identified at Step Five would require exposure to notable environmental conditions such as temperature extremes, atmospheric conditions, radiation, toxic or caustic chemicals, or other environmental conditions. *See Selected Characteristics of Occupations*, D.O.T. 381.687-014, D.O.T. 920.687-018, D.O.T. 381.687-018 (Dept. of Labor, 1993). Therefore, any omission from the RFC of a restriction related to asthma would at most be harmless error because the inclusion of such a limitation would not alter the validity of the Step Five finding and the ultimate conclusion of non-disability. *See Cottrell*, 206 F. Supp. 3d at 810;

*Camarata*, 2015 WL 4598811, at *16; *Ryan*, 650 F. Supp. 2d at 217.  Therefore, remand would not be warranted even if Plaintiff's argument regarding Dr. Puri's opinion was accepted.

Based on the above, the Step Two finding is supported by substantial evidence.  Remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: October 6, 2017
Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge